JEHIEL S. KENDALL, RESPONDENT, *v.* W. H. McFAR-
LAND, APPELLANT.

MECHANIC'S LIEN.—When judgment is rendered to enforce a mechanic's lien, an execution may be issued thereon to sell the premises.

DEM.—Under the statute mechanics' liens have precedence over all other liens after the commencement of the building; but the statute must be strictly complied with in order to secure such precedence.

IDEM.—In an action to enforce such liens it should appear when the building was commenced, to enable the Court to determine when the liens attached.

IDEM.—If it nowhere appears in the judgment-roll when the liens attached to the building. the judgment would operate as a lien upon the premises as an ordinary judgment from the time it was docketed.

APPEAL from Benton County.

*Strahan & Burnett,* for Respondent.

*Chenoweth, Hill, Thayer and Williams,* for Appellant.

By the Court, PRIM, J.:

This was a suit in equity, commenced in the Circuit Court of Benton County, by respondent J. S. Kendall, to foreclose a mortgage on certain premises, situate in the town of Corvallis, with a building thereon known as "Hunt's Brewery." This mortgage was executed on June 30, 1870, by Joseph Hunt and Anna Hunt, his wife, to secure the payment of one thousand dollars. W. H. McFarland, John Hunt, Bernard Hunt and Henry Solle were also made defendants to this suit. The appellant, W. H. McFarland, not being united in interest with his co-defendants, filed a separate answer, claiming to be the absolute owner of the premises embraced in the mortgage.

The title claimed by appellant was obtained as follows, to wit: He and six others claimed to be the holders of mechanics' liens against the said premises, in different amounts, for labor and materials furnished for the construction of the building thereon known as "Hunt's Brewery." Prior to the commencement of this suit these lien-holders had commenced separate actions at law against said Hunt to recover the respective amounts due them, and to enforce their respective liens against said premises. Each of them succeeded in obtaining a judgment against Hunt for the amount due him, and also a judgment that the premises be sold and the proceeds thereof applied to the discharge of his said lien. The aggregate amount of these judgments was $2245.65 exclusive of cost and disbursements. Three of these judgments were docketed on the 9th day of Decem-

ber, 1870, two of them on the 28th of November, 1870, and
two on the 7th day of December, 1870. The mortgage was
executed and recorded prior to the time when these judg-
ments were docketed, and it nowhere appears in the records
of these judgments when the building was commenced or
when the mechanics' liens attached.

Executions were issued on each of these judgments against
Joseph Hunt for the amount specified therein, and were
levied upon the premises described in the mortgage. The
notice required by law having been given, the premises were
sold by the Sheriff, under and by virtue of said executions,
to appellant for $2550. The sale was duly confirmed by
the Court, and after the term for redemption had expired
the Sheriff executed a deed to McFarland, who immediately
took possession of said premises. These executions were
not issued specially against the property upon which these
parties claimed to hold mechanics' liens, but against Joseph
Hunt, commanding the Sheriff "that out of the personal
property of said defendant, or if sufficient cannot be found,
then out of the real property belonging to said defendant,
in your county, on or after the 7th day of December, 1870,
you satisfy the sum of ——— dollars." Upon the hearing
of this cause the Circuit Court found the equities to be with
respondent, and entered a decree in accordance with such
finding, from which McFarland has appealed to this Court.

The question presented here is, what interest or rights
did appellant acquire in the property in question, sold by
the Sheriff under the executions issued upon these several
judgments? If the parties desired to enforce their respect-
ive liens against the property upon which they were claimed
they should have issued special executions to sell that
property.

The statute, in providing how such liens may be enforced,
provides that "if judgment be rendered for the plaintiff
he may have an execution issued thereon to sell the prem-
ises." (Mis. Laws, ch. 32, § 6.)

The executions issued were not special, but general exe-
cutions authorizing the Sheriff to sell such real property as
belonged to Hunt on the day the judgments were docketed,

or at any time thereafter, upon the condition that sufficient personal property could not be found by said Sheriff out of which to satisfy said execution. But the mortgage of respondent having been executed and duly recorded, prior to the time when these judgments were docketed, Hunt, it appears, had parted with all his interest in this property, prior to that time, unless it might be the right of redemption. But it is claimed that the liens for which these judgments were given were mechanics' liens, and that it is provided by statute that such "liens shall have precedence over all other liens after the commencement of the building." (Mis. Laws, ch. 32, § 7.)

The statute undoubtedly has given priority and precedence to this class of liens over all other liens, but a party who wishes to secure such priority and precedence is required to proceed strictly in accordance with the provisions of the statute. It was held by this Court at a former term, that the remedy created by this statute is an extraordinary one, "created in derogation of common law and ought to be strictly construed." (*Dalles Lumber and Manufacturing Company* v. *The Wasco Woolen Manufacturing Company*, 3 Ogn. 527.)

No time having been specified in any of these judgments when the building was commenced, upon which the liens were claimed, the judgments could only operate as liens upon such property, the same as an ordinary judgment, from the time when they were placed upon the judgment-lien docket; and in consequence of these judgments failing to show when the mechanics' liens attached to the building, we are unable to see how any other or greater interest could have been sold under special execution than was owned by Hunt in the property on the day when the judgments were docketed.

In an action to enforce a mechanic's lien, if the party desires his lien to be enforced from the commencement of the building upon which the lien is claimed, the time when the building was commenced should be averred in the complaint, so that it may be determined and adjudged by the Court at what time said lien attached to the building.

To enable appellant to hold the premises against the mortgage of respondent, it should have appeared in the judgments and proceedings under which he claims title, that these mechanics' liens attached to the building in question prior to the time when respondent's mortgage was executed and recorded. The time when these liens commenced to have an existence was one of the main questions to be ascertained and judicially determined in said action. If no time was mentioned in said proceedings when said liens attached, we are unable to see how it can be done here after said judgments have been executed.

Again, if this mortgage was executed prior to the commencement of these actions to enforce these mechanics' liens, respondent was entitled to have the summons served upon him, so that he might become a party defendant to said actions, if he desired to do so. This, however, not having been done, these judgments could not conclude any rights defendant may have had in said premises.

It is ordered that the decree of the Court below be affirmed.